805 P.2d 449

Don J. SIMPLOT, Plaintiff–Appellant,

v.

WILLIAM C. OWENS, M.D., P.A., an Idaho corporation; William C. Owens, M.D., as trustee for William C. Owens, M.D., P.A., Pension Plan and William C. Owens, M.D., P.A., Profit Sharing Plan, Defendants–Respondents,

and

Chester D. Howard and Randi D. Howard, husband and wife, Defendants.

No. 18548.

Supreme Court of Idaho, Boise, September 1990 Term.

Nov. 16, 1990.

Clemons, Cosho & Humphrey, Boise, for plaintiff-appellant; Stanley W. Welsh (argued).

Imhoff & Lynch, Boise, for defendants-respondents; Richard A. Cummings (argued).

BISTLINE, Justice.

The district court upheld the hearing examiner's finding that respondent Owens held a valid security interest in a 1956 GMC bus owned by appellant Simplot. The Court of Appeals affirmed the district court's decision. We granted appellant's petition for review of the decisions below, which held that a security interest was created by two promissory notes, each containing the words "SECURITY: 1956 GMC bus," and by a certificate of title endorsed and delivered to Owens. We also conclude that a valid security interest was created and, accordingly, there was no error in the decisions reached, the facts of the case being undisputed.

In March, 1985, respondent Dr. William Owens, acting as trustee of the pension and profit sharing plans created by his professional corporation, loaned $25,000 to Chester Howard. The loan was evidenced by two promissory notes signed by Mr. Howard, each containing the words "SECURITY: 1956 GMC bus." As security for payment of the notes, Howard endorsed the certificate of title of his bus and delivered the certificate to Owens. While still in possession, approximately five months

later, on August 26, 1985, Howard sold the bus to Don Simplot for $45,000, to be paid in installments. Simplot, who appears before us as appellant, paid the last installment on January 22, 1986. He then took possession of the bus and received a bill of sale from Howard. The bill of sale recited that the bus was free from all liens and encumbrances. On Simplot asking for the certificate of title, Howard told him it was lost. The two of them conducted a fruitless "search" to see if the certificate could be found among Howard's papers. Simplot then requested that the Idaho Department of Transportation conduct a title search and also applied for a transfer of title. His application was stamped "received" by the Department on May 2, 1986. *Simplot v. Owens*, 119 Idaho 271, 273, 805 P.2d 477, 479 (Ct.App.1990).

Meanwhile, in April, 1986, Owens approached Howard and demanded payment of the loan. No payment was made. On May 5, 1986, Owens applied for a certificate of title showing Howard as the owner and Owens as a lienholder. On May 7, despite the fact that Simplot's application was pending, the Department issued Owens the requested title. On May 20, the Department also issued a certificate of title to Simplot, designating him as the owner and showing no liens or encumbrances. Sometime thereafter, Howard notified Simplot that Owens was claiming a security interest in the bus. At Simplot's request, the Idaho Department of Transportation held a hearing to determine the parties' respective interests. The Department concluded that Simplot owned the bus, but that the title was encumbered by Owens' lien. *Simplot*, 119 Idaho at 273, 805 P.2d at 479.

Simplot then filed this action, claiming ownership free of all liens and seeking an award of damages against Howard. Howard could no longer be found. He was served by publication and a default judgment eventually was entered against him. With respect to the dispute between Simplot and Owens, the district judge upheld the Department's determination that Owens was a lienholder. *Simplot*, 119 Idaho at 273, 805 P.2d at 479. On Simplot's filing

of an appeal in this Court, we assigned the case to the Court of Appeals; the Court of Appeals affirmed the district court's decision. We affirm the district court judgment; we also affirm the rationale of the Court of Appeals decision.

Where review has been granted, the established procedure is that we turn directly to the decision of the trial court, and to the briefs which were considered by the Court of Appeals, following which we hear oral argument and take the case under advisement. We extend serious consideration to the views of the Court of Appeals, having previously reviewed that court's opinion in considering the merit of the petition seeking review. Where there is no dispute as to the factual circumstances, our review consists of ascertaining the effect of applicable law on the undisputed material facts.

Simplot contends that no security interest in the bus was created by the two promissory notes containing the words "SECURITY: 1956 GMC bus," and the endorsement and delivery of the certificate of title to Owens. I.C. § 28–9–203 provides in part:

A security interest is not enforceable against the debtor or third parties unless:

(a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral ...; and

(b) value has been given; and

(c) the debtor has rights in the collateral.

Idaho Code § 28–9–105(1)(*l*) defines the term security agreement as:

'Security agreement' means an agreement which creates or provides for a security interest.

Idaho Code § 28–1–201(3) defines agreement as:

'Agreement' means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in this act (sections 28–1–205

and 28–2–208). Whether an agreement has legal consequences is determined by the provisions of this act, if applicable; otherwise by the law of contracts (section 28–1–103). (Compare "Contract.") Idaho Code § 28–1–201(37) defines security interest as:

'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation.

*Matter of Miller,* 545 F.2d 916 (5th Cir. 1977), held that "[t]he principal test for determining whether a transaction is to be treated as [creating] a security interest is: '[I]s the transaction *intended* to have effect as security.'" *Miller,* 545 F.2d at 918 (quoting UCC § 9–102, Official Comment 1) (emphasis added by 5th Cir.); *See also Idaho Bank and Trust Co., Inc. v. Cargill,* 105 Idaho 83, 87, 665 P.2d 1093, 1097 (Ct. App.1983).

The Department of Transportation hearing examiner concluded that Howard intended to create a security interest by Howard's execution and delivery to Owens of the two promissory notes both containing the words "SECURITY: 1956 GMC bus," together with the certificate of title to the bus. The district court concluded that the hearing examiner's finding was supported by substantial evidence. *Simplot v. Owens,* 119 Idaho at 273, 805 P.2d at 479.

Simplot challenges the validity of that conclusion. Simplot argues to us that to create a valid security interest there must be words of transfer, assignment, grant, creation or provision and that the words endorsed on the note do not satisfy that requirement. His argument rests on a line of cases stemming from *American Card Co. v. H.M.H. Co.,* 196 A.2d 150 (R.I.1963). *American Card* stands for the narrow proposition that a financing statement fails to qualify as a security agreement where it does not evidence that the debtor *granted* the creditor a security interest. However, *American Card* did not require the document to contain the word "grant." *Id.* at 152. Moreover, such interpretation has been largely criticized and rejected. *E.g., In the Matter of Amex–Protein Dev.*

*Corp.,* 504 F.2d 1056, 1059–60 (9th Cir. 1974). The Court of Appeals for the Ninth Circuit in *Amex–Protein* adopted verbatim the opinion of the district court for the Northern District of California:

*Shelton* [*v. Erwin,* 472 F.2d 1118 (8th Cir.1973)], together with other cases relied upon by the trustee, stem from the ruling in *American Card Company v. H.M.H. Co.,* 196 A.2d 150 (R.I.1963), and therefore share its infirmities. There the court found that a financing statement which did not contain a 'grant' of a security interest could not also serve as a security agreement. There is no support in legislative history or grammatical logic for the substitution of the word 'grant' for the phrase 'creates or provides for.' This case has been subject to harsh criticism, *see* G. Gilmore Security Interests in Personal Property § 11.4 at 347–348 (1965); 6D Bender's Uniform Commercial Code Service 2–1680, and it cannot be relied upon as dispositive in the instant case.

*Amex–Protein,* 504 F.2d at 1059–60. The phrase "creates or provides for" which is referred to in the above passage came from the California Commercial Code § 9105(1)(h). *Amex–Protein* also applied California Commercial Code §§ 1201(37) and 9203. *Id.* at 1057. These three sections are identical to I.C. §§ 28–9–105(1)(*l*), 28–1–201(37), and 28–9–203, respectively. Both the California and Idaho sections are taken from the Uniform Commercial Code. 1963 Cal.Stat. 819, *amended by* 1974 Cal. Stat. 997; 1967 Idaho Sess.Laws 161, *amended by* 1979 Idaho Sess.Laws 299. The Ninth Circuit's interpretation of these sections is therefore pertinent and highly persuasive to this Court in our application of the above-mentioned provisions of Idaho statutory law.

Our Idaho Court of Appeals has heretofore confronted the *American Card* proposition and held that "granting" language is not required to create a security interest:

Courts have often repeated that no magic words are necessary to create a security interest and that the agreement itself

need not even contain the term 'security interest.' This is in keeping with the policy of the code that form should not prevail over substance and that, whenever possible, effect should be given to the parties' intent.

*Cargill*, 105 Idaho at 87, 665 P.2d at 1097. The promissory notes and the certificate of title, when examined, serve to satisfy the requirement of displaying both a loan to Howard and the taking of security for the payment thereof.

Appellant raises equitable arguments for the first time on appeal. "With few exceptions, this Court will not address issues raised for the first time on appeal." *Nycum v. Triangle Dairy Co.*, 109 Idaho 858, 862 n. 6, 712 P.2d 559, 562 (1985) (The opinion in that case listed the exceptions: jurisdiction, failure to state a claim upon which relief can be granted and constitutional questions.).

The decision of the district court is affirmed. Costs to respondents. No attorney fees awarded relative to proceedings in this Court. It should readily appear that our determination to grant review is demonstrative of our view that the issues at stake were deserving of a final review.

BAKES, C.J., JOHNSON and BOYLE, JJ., and BECKER, J. pro tem., concur.