In the Matter of COMBUSTION EQUIP-MENT ASSOCIATES, INC., Debtor,

Hart-Carter Company, Debtor.

Bankruptcy Nos. 80B11757, 80B11758.

United States Bankruptcy Court,
S. D. New York.

Jan. 28, 1981.

Irving Picard, New York City, United States Trustee.

Nathan Fuchs, New York City, Securities & Exchange Commission.

Jack Gross, Stroock & Stroock & Lavan, New York City, for CEA Unsecured Creditors Committee.

Seth Dubin, Satterlee & Stephens, New York City, for Hart-Carter Unsecured Creditors Committee.

Moses & Singer, New York City, for Aetna Casualty & Surety of Illinois, et al.

Arthur S. Olick, Anderson, Russell, Kill & Olick, Philip S. Olick, Townley & Updike, New York City, for debtors.

JOHN J. GALGAY, Bankruptcy Judge.

The committee of creditors of Combustion Equipment Associates, Inc. (CEA) claiming security and the committee of creditors of Hart-Carter Company claiming security (the Committees) seek this Court's approval of the Authorization and Fee Sharing Agreement entered into by the members of the Committees. Based on this Court's review of the Bankruptcy Code, testimony at the hearing on January 21 and relevant case law, the application must be denied.

CEA is the parent corporation of the wholly owned subsidiary Hart-Carter. Each company filed its own voluntary petition for reorganization, so although these cases are closely related, they are separate and distinct, each having its own set of creditors' committees.

After notice and hearing, by an order dated October 31, 1980, this Court authorized the appointment of a committee of creditors of CEA claiming security interests pursuant to Section 1102(a)(2) of the Bankruptcy Code, 11 U.S.C. § 1102. The United States Trustee appointed The Equitable Life Assurance Society of the United States, New England Mutual Life Insurance Company, Central Life Assurance Company, Teachers Insurance and Annuity Association of America (the Insurance Companies), Bank of America, Bank of Montreal, New York Agency, Continental Illinois Bank and Trust Company of Chicago, and the New York branch of the Untion Bank of Bavaria (the Banks), to serve as the members of the committee. By an order dated November 10, 1980, this Court ordered the appointment of a committee of creditors claiming security in Hart-Carter also under Section 1102(a)(2). The United States Trustee appointed these same Insurance Companies and Banks to serve on the Hart-Carter committee.

The claims of the Banks arise out of a loan agreement dated October 31, 1979 among the Banks and CEA, Hart-Carter and Carter Day Company (not presently before this Court). The claims of the Insurance Companies arise out of purchase agreements dated March 31, 1975 between the Insurance Companies and CEA, Hart-Carter and Carter Day.

The Committees have submitted an Authorization and Fee Sharing Agreement to this Court for its approval. This agreement attempts to coordinate the legal representation of the individual members of the Committees with that same need of the Committees as representative bodies. Under the terms of the agreement, paragraph 3b, when the members determine that certain legal services will benefit the committee as a whole, by unanimous vote the matter will be assigned to counsel "who may be counsel to one or more of the members." In the application accompanying the order, the Committees articulate the goal of the agreement—to avoid the unnecessary expense of retaining counsel unfamiliar with the history of what has become a complex proceeding in a very short time. The application continues at paragraph 7 to state that the agreement "does not contemplate or require the resignation of any members' counsel in order to represent the Committees on any particular matter." It is this aspect of the agreement which runs afoul of the provisions of the Bankruptcy Code.

■ Section 1103(b) of the Bankruptcy Code states that a person employed to represent a committee *may not* while employed by that committee, represent any other en-

tity in connection with the case. The Committees clearly recognized that the contemplated agreement violates this provision of the law since the proposed order submitted asks this Court to approve the agreement "notwithstanding § 1103(b) of the Bankruptcy Code."

The legislative history to Section 1103(b) forcefully states the goal of this section, to prevent even the possibility of conflicts of interest.

> In order to discourage the practices surrounding election of creditors' committees today and to avoid a serious potential for conflict of interest, the bill *requires* that counsel to the creditors' committee cease any representation of creditors in their individual capacities in connection with the case... If the creditors on a committee split on a vote, the attorney for a particular creditor on the committee may be required to represent both the committee's position and his creditor-client's position, which may be directly contrary to the committee's position... It does not require the attorney to cease representation of the creditors in matters unrelated to the case. It merely sets out a *mandatory anticonflict of interest rule for each case.* (Emphasis added.)

H.R.Rep.No.595, 95th Cong., 1st Sess. 104–5, U.S.Code Cong. & Admin.News 1978, 5963, 6066 (1977). This Court does not believe that the requirements of Section 1103(b) can be waived, even in the interests of reducing costs and, at least initially, increasing the effectiveness of representation. The agreement does not deal with the most problematic situation—where the committee should take some action in furtherance of its duties under Section 1103(c) to investigate the acts, conduct, assets, liabilities and financial condition of the debtor but rather the members of the committee do not unanimously determine that such action is in their best interests.

█ The concern with conflict of interest between the attorney for the creditors' committee and the interests of the individual creditors who comprise that committee was evident in the case law under the Bankruptcy Act. *In re Bohack Corporation*, 607 F.2d 258 (2d Cir. 1979); *In re Ira Haupt & Co.*, 361 F.2d 164 (2d Cir. 1966). Judge Ryan in *In re Proof of the Pudding, Inc.*, 3 B.R. 645, 1 CBC 2d 1043 (Bkrtcy., S.D.N.Y.1980), in determining that the same attorneys could not represent the three separate creditors' committees of closely related Chapter 11 cases, discussed both the trend under prior cases and the effect of Canons Five and Nine of the Code of Professional Responsibility. It is not only actual conflict which must be avoided, but even the simple appearance of a conflict. "To avoid the manifestation of this conflict would serve both the interests of the parties as well as the integrity of this court. Neither the appointment of special counsel once conflicts materialize, nor the resignation of (the firm) would be as suitable as denying the creditors' applications in the first instance." Id. 3 B.R. 645, 1 CBC at 1045.

As this Court wholly agrees that prevention is more effective than cure, the application for approval of the Authorization and Fee Sharing Agreement is hereby denied.

It is so ordered.