**In re LILLIAN LAURENCE LIMITED, Debtor.**

**Bankruptcy No. 86–00816.**

United States Bankruptcy Court, District of Columbia.

Jan. 31, 1992.

**2**

Philip McNutt, Washington, D.C., for debtor.

## DECISION RE REVISED APPLICATION FOR APPROVAL OF EMPLOYMENT NUNC PRO TUNC

S. MARTIN TEEL, Jr., Bankruptcy Judge.

Counsel for the debtor in possession has filed a revised application for approval of employment *nunc pro tunc* to the commencement of the case and for interim compensation for the period from October 31, 1986 through November 30, 1989. The U.S. Trustee objects to the application on the grounds that counsel's initial application for employment was untimely, that counsel failed to file a revised application in a timely fashion, and that counsel failed to disclose a conflict of interest in the initial application. For the reasons that follow, the court denies counsel's revised application for approval of employment *nunc pro tunc* and for interim compensation.

### FACTS

This case was commenced by the filing of a voluntary petition under Chapter 11 of the Bankruptcy Code on November 7, 1986. More than two years later, on December 7, 1988, counsel for the debtor filed an application for approval of employment *nunc pro tunc* and for interim compensation. On December 13, 1988, the court entered an order denying the application without prejudice on the ground that it failed to comply with the last sentence of Bankruptcy Rule 2014(a).[1] The Affidavit filed with the initial application for employment in this case merely stated that neither the affiant nor his law firm was an interested party in the Chapter 11 proceeding, nor did they hold any interest adverse to the debtor or the debtor's estate. Because the Affidavit failed to specifically state the applicant's connections with creditors or any other party in interest and their respective attorneys and accountants, the application was denied without prejudice.

It was not until February 13, 1990, that debtor's counsel filed a revised application for employment *nunc pro tunc* and for interim compensation of $36,906.30 plus expenses of $947.56. In the meantime, the court entered an order confirming the debtor's plan of reorganization on August 28, 1989. The revised application was accompanied by a revised Affidavit which states that counsel for the debtor had represented Burton Gertler, the sole shareholder of the debtor, regarding his personal guarantee liability for certain pre-petition debts of the debtor. The revised Affidavit further states that while representing Mr. Gertler, none of the creditors' claims against the debtor's estate were compromised, settled or negotiated, and that counsel withdrew

1. The last sentence of Rule 2014(a) requires that an application for the employment of professionals be "accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants." Many attorneys practicing before this court have discovered that strict compliance with Rule 2014(a) is required, and that the omission of a statement regarding the applicant's connections with "respective attorneys and accountants" in the verified statement will result in the denial of an application for employment. Further, it should be noted that as of August 1, 1991, Rule 2014(a) was amended and now requires that the verified statement also set forth the applicant's connections with the United States trustee or any person employed in the office of the United States trustee.

from representation of Mr. Gertler on December 14, 1989.

On April 6, 1990, the U.S. Trustee filed a response to the revised application. While acknowledging that the service provided by counsel for the debtor benefitted the estate, the U.S. Trustee questions the timeliness of both the initial application and the revised application. Further, the U.S. Trustee objects to the revised application because counsel failed to disclose its representation of the debtor's president and sole shareholder until after a plan of reorganization was confirmed, thereby precluding the court from determining before such representation concluded whether counsel represented an interest adverse to the estate or was "disinterested" as required by Section 327(a) of the Bankruptcy Code.

### DISCUSSION

■ Section 327(a) authorizes the trustee, with the court's approval, to employ attorneys and other professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons."[2] Bankruptcy Rule 2014(a) supplements § 327(a) and provides that "[a]n order approving the employment of attorneys ... or other professionals pursuant to § 327 or § 1103 of the Code shall be made only on application of the trustee...." Under § 1107(a), a debtor in possession is given all the rights and powers of a trustee and may therefore apply for the approval of the employment of professionals.

Courts are divided on the issue of whether the employment of a professional may be approved on a retroactive basis. Some courts have taken a strict approach and have held that an order may not be entered retroactively to approve the appointment of attorneys when counsel has not applied for an order approving his employment before he commences work. *In re Liddell*, 46 B.R. 682 (Bankr.E.D.Cal.1985); *In re Call*, 36 B.R. 374 (Bankr.S.D.Ohio 1984); *In re Mork*, 19 B.R. 947 (Bankr.Minn.1982). Oth-

er courts have been more lenient and have retroactively approved the employment of professionals even when the failure to obtain the requisite order results from inadvertence or neglect. *In re Vlachos*, 61 B.R. 473, 479 (Bankr.S.D.Ohio 1986); *In re King Electric Co., Inc.*, 19 B.R. 660 (E.D.Va.1982). Still other courts have adopted a rule which limits retroactive approval of employment to cases in which prior approval would have been appropriate and extraordinary circumstances are present. *In re Arkansas Co., Inc.*, 798 F.2d 645 (3rd Cir.1986); *In re Diamond Mortgage Corp.*, 77 B.R. 597 (Bankr. E.D.Mich.1987).

In *In re Johnson*, 21 B.R. 217, 218 (Bankr.D.D.C.1982), this court denied a motion seeking the entry of an order authorizing the retention of counsel on a nunc pro basis. In *Johnson* the court entered an order authorizing the retention of counsel for the debtor in possession on May 27, 1982. Counsel subsequently sought to have the May 27, 1982, order entered on a *nunc pro tunc* basis in order to provide for the attorneys' services rendered from the initiation of the case in October 1981. Counsel asserted their "mistaken impression that specific appointment of counsel need not be obtained substantially in advance of the filing of a petition for interim compensation" as grounds for the relief sought. *In re Johnson*, 21 B.R. at 218. While this court recognized that *nunc pro tunc* applications in certain extraordinary situations may be warranted, it found that the facts stated in the pending motion did not compel or in any way constitute sufficient justification for the entry of a nunc pro tunc order. *Id.*

■ In this case, debtor's counsel explained the untimeliness of its initial application for approval of employment by stating that counsel believed that an application was prepared and filed with the court shortly after the case was filed. However, counsel believes that the application was either misplaced or returned by the clerk's

---

**2.** As relevant herein, "disinterested person" is defined by § 101(14)(E) as a person that "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ..., or for any other reason."

office for some reason because it was in fact never filed. While the court does not find this explanation to constitute extraordinary circumstances which warrant the entry of a *nunc pro tunc* order approving employment, there exist more compelling grounds which warrant the denial of counsel's application in this case. The court finds that counsel's failure to disclose its dual representation of the debtor and the debtor's principal officer and shareholder until after its representation of the debtor had virtually been completed warrants the denial of the application for *nunc pro tunc* employment and for interim compensation under the facts presented in this case.

As noted in *In re Grabill Corp.*, 113 B.R. 966, 970 (Bankr.N.D.Ill.1990), *aff'd*, 135 B.R. 835 (N.D.Ill.1991), there is a split of authority over whether courts should draw distinctions between potential and actual conflicts of interest. Some courts hold that potential conflicts of interest do not warrant removal of the attorney for the debtor in possession in the absence of fraud or actual conflict, whereas other courts consider the concept of potential conflicts as a contradiction in terms. In *In re Kendavis Industries Int'l, Inc.*, 91 B.R. 742, 754 (Bankr.N.D.Tex.1988), the court held that whenever counsel for a debtor corporation has any agreement, express or implied, with management or a director of the debtor, or with a shareholder, or with any control party, to protect the interest of that party, counsel holds a conflict. Further, the court held that the conflict is actual, not potential, and that it arises the date that representation commences. *Id.*

In *Roger J. Au & Son, Inc. v. Aetna Ins. Co.*, 64 B.R. 600 (N.D.Ohio 1986), a case similar to the one at bar, the district court upheld the bankruptcy court's determination that an attorney and his law firm's past representation of the principal officer and sole shareholder of the debtor, which representation included legal services relating to the potential liability of the officer arising from personal guarantees of various loans obtained by the debtor, rendered them not "disinterested" as defined in section 101(13) of the Code, and disqualified

them under section 327(a). *Roger J. Au & Son, Inc. v. Aetna Ins. Co.*, 64 B.R. at 606. The bankruptcy court found, *inter alia*, that the representation by the attorney and his firm of the debtor in possession and the debtor in possession's sole shareholder and principal officer, who was also a guarantor of certain of the debtor in possession's debts, created a significant danger of a shifting of loyalties. *Id.* The district court found ample authority to support the bankruptcy judge's determination that the possibility of conflict warrants disqualification of an attorney who represents simultaneously a debtor in possession, and the debtor in possession's sole shareholder and principal officer where the two hold potentially adverse interests. *Id.*

However, in *In re Huddleston*, 120 B.R. 399 (Bankr.E.D.Tex.1990), the court allowed the dual representation of the debtor-in-possession corporation and its debtor-in-possession sole shareholder. In *Huddleston*, both a corporation and its sole shareholder filed for protection under Chapter 11, and each debtor filed an application to employ the same partner of the same law firm. The U.S. Trustee filed an objection to the applications on the ground that a potential conflict of interest existed due to the mutuality of debts owed by both debtors to the Internal Revenue Service and the Texas Employment Commission for taxes. *Id.* at 400. Convinced that no clear rule exists to prohibit the representation, by the same attorney, of a debtor in possession corporation as well as its sole or majority shareholder, who also happens to be a debtor in possession, the court held that determinations of impermissible conflicts of interest are to be made on a case-by-case basis. *In re Huddleston*, 120 B.R. at 402. In the case before it, the court found that the relationship between the two debtors in possession did not in and of itself require a partial or total disqualification. Considerations supporting the court's decision were the "mom and pop nature" of the relationship between the corporate debtor in possession and the individual debtor in possession, and counsel's assertion that the parties would not be able to afford separate

counsel. *Id.* at 403. Further, the court was not convinced that the dual nature of the debts necessarily resulted in an actual conflict of interest, and placed great weight on counsel's promise that he would voluntarily disgorge any fees upon a subsequent finding by the court that a conflict of interest exists. *Id.*

■ While courts may disagree on the issue of whether counsel may represent both a debtor and a debtor's principal, it is without question that Rule 2014(a) requires attorneys seeking approval of their employment to make full and complete disclosure of their affiliation with all parties in interest. *In re Huddleston*, 120 B.R. at 401 (counsel's conclusion that no conflict exists between a debtor in possession corporation and its debtor in possession sole shareholder did not negate his obligation to allow the court to make that determination de novo). The rationale for requiring full disclosure of potential conflicts was aptly stated as follows:

> To the extent actual or potential conflicts are not disclosed, the court is prevented from exercising its statutory obligation to rule on the propriety of the employment. The importance of this secondary protection against conflicts of interest should not be minimized. Of course, the primary protection continues to be each attorney's resolve to fully disclose potential conflicts to the clients and to accept employment only when actual or potential conflicts are mitigated under the law. Accordingly, counsel should not petition the court for employment unless counsel conscientiously believes that there are no conflicts or that potential conflicts are outweighed by other legally cognizable factors. In situations where counsel is aware of apparent conflicts which counsel believes are outweighed by other factors, the conflicts must be disclosed. The court then can

exercise its independent judgment. The decision concerning the propriety of employment should not be left exclusively with counsel, whose judgment may be clouded by the benefits of the potential employment. The exercise of the court's independent and informed discretion is an important protection to clients who may not be sophisticated in assessing conflicts of interest and to the court system which has an interest in avoiding even the appearance of impropriety.

*In re Roberts*, 75 B.R. 402, 411 (D.Utah 1987).

■ Courts have recognized that the failure to disclose facts giving rise to a conflict of interest is an independent basis for denial of compensation. *In re Thompson*, 54 B.R. 311, 317 (Bankr.N.D.Ohio 1985), *aff'd*, 7 B.R. 113 (N.D.Ohio 1987); *In re Guy Apple Masonry Contractor, Inc.*, 45 B.R. 160, 163 (Bankr.D.Ariz.1984).[3]

■ In oral argument, counsel for the debtor stated that the law firm delayed in filing the second application for appointment as counsel because it was waiting for this court's November 30, 1989, ruling on a conflict issue in another case before this court, *In re Watergate Hairstylists, Inc.*, Case No. 89–00158, in order to file the new application in accordance with the court's decision. However, counsel admitted that the facts in the other case were different. Moreover, in *Watergate Hairstylists*, counsel disclosed its representation of the debtor's principal in its initial application for employment, and a hearing was held on November 30, 1989, on the issue of whether counsel should withdraw from representing the debtor's principal regarding his disputed personal liability for unpaid taxes of the debtor.

In this case, counsel did not disclose its representation of the debtor's principal in

---

3. However, when an appointment has been authorized under 11 U.S.C. § 327(a), the law does not require the denial of all fees and costs where the equities outweigh the need for attorney discipline for failure to disclose potential conflicts. *In re Roberts*, 75 B.R. at 412. *See* 11 U.S.C. § 328(c) (court *may* deny fees of attorney employed under § 327 if during employment the attorney represents an adverse interest). At least one case holds that Section 328(c) does not apply when there has never been an authorization of employment. *In re Grabill Corp.*, 113 B.R. at 971–72. Even had there been an authorization of employment here, the law firm has not shown a presence of equities outweighing the need for attorney discipline.

its initial application for employment. Such disclosure was not made until the revised application was filed on February 13, 1990, more than three years after the petition was filed and more than five months after the plan was confirmed. At this point, the bulk of the legal work required in the case had been completed. Waiting for the court's decision regarding representation of a debtor principal in another case did not excuse counsel from disclosing its dual representation in this case in a timely manner. Even if the facts of the two cases were identical, it was still incumbent upon counsel to disclose any potential conflicts at the time the initial application for employment was filed. Counsel implicitly acknowledges that it had focused on the issue concerning representation of Mr. Gertler but delayed disclosing it pending the outcome of *Watergate Hairstylists*. This is not inadvertence; it is a conscious decision not immediately to disclose a possible conflict. Such conduct cannot be condoned.

Had counsel for the debtor disclosed its dual representation of the debtor and Mr. Gertler, it is unlikely that the court would have approved such representation in this case. While counsel for the debtor represented in its revised application for employment that during the course of Mr. Gertler's representation no attempt was made by counsel to compromise, settle or negotiate the creditors' claims against the debtor's estate, the debtor's plan of reorganization, which was confirmed during the period of dual representation, provides that Mr. Gertler would be released from any further liability stemming from his involvement with the debtor after making a $10,000 contribution to the plan. Further, the debtor's statement of financial affairs indicates that "Repayments of loans to B. Gertler" totalling $12,000 were made from November 9, 1985 through October 15, 1986. Counsel for the debtor argued that the debtor was repaying the loan obligation as a salary to Mr. Gertler, but acknowledged that there may still have been a potential preference.

The court deems it unnecessary to determine now whether counsel's representation of Mr. Gertler created an actual conflict of interest which precluded counsel's employment by the debtor. At a minimum, an appearance of impropriety was created by the facts that the confirmed plan provides for the release of Mr. Gertler from his guarantee liabilities and that he received what may have been preferential payments. Had the court been aware of this dual representation at the time counsel filed its initial application for employment, steps could have been taken to avoid any appearance of impropriety. However, counsel did not disclose the fact that it represented Mr. Gertler until its representation of the debtor was a *fait accompli*. The court finds that this failure timely to disclose, combined with counsel's failure timely to file the initial application as well as the revised application, justifies a denial of retroactive employment and of compensation. *See, In re Roaring Creek Mining Co., Inc.*, 51 B.R. 866 (Bankr.E.D.Tenn. 1985) (court denied counsel's motion for *nunc pro tunc* appointment as counsel for the debtor in possession where a proper application for appointment would have raised a close question as to whether the attorneys were representing an interest adverse to the bankruptcy estate); *In re Apex Oil Co.*, 128 B.R. 671, 674 (Bankr. E.D.Mo.1991) (where counsel failed timely to disclose its relationships with the debtors and related entities, thereby preventing the court and the interested parties from making an informed decision as to the disinterestedness and the existence of any adverse interests, the court denied compensation and reimbursement of expenses incurred during the period of nondisclosure).

 In conclusion, the court will deny the application for employment as counsel for the debtor in possession *nunc pro tunc* to the commencement of the case. The court will authorize employment effective only commencing February 13, 1990, the date counsel finally made the disclosure required by Bankruptcy Rule 2014(a). Although counsel ceased representation of Mr. Gertler on December 14, 1989, the conscious continued delay in filing the revised application mandates not approving repre-

sentation retroactive to December 14, 1989. The court will also deny the application for interim compensation which covered the period from November 7, 1989, the date of commencement of the case, to November 30, 1989. During the pendency of the case the debtor has been a debtor in possession (*see* 11 U.S.C. § 1101(1)) and representation of it has thus been subject to court approval under 11 U.S.C. § 327. Prior to the commencement of the case, the debtor was not a debtor in possession and hence court approval of counsel's employment was not required. *In re Roaring Creek Mining Co., Inc.,* 51 B.R. at 569. The court will not reduce fees based on dual representation because there is no evidence that counsel violated any professional ethics or that the dual representation affected the quality of services rendered to the debtor in the pre-petition period. *Id.* The services were rendered in contemplation of the case within the meaning of 11 U.S.C. § 329: the time spent was 2.25 hours and related to reviewing schedules, categorizing claims, and ascertaining assets. The pre-petition charges of $360 are thus allowable under 11 U.S.C. §§ 329 and 330(a). *See In re S.T.N. Enterprises, Inc.,* 70 B.R. 823, 840 (Bankr.D.Vt.1987). An appropriate order will be entered.