**In re Earl E. SMITH and Joan C. Smith, dba JES Farms, Debtors.**

**Bankruptcy No. 84–01528.**

United States Bankruptcy Court, N.D. Ohio, W.D.

Jan. 23, 1985.

David C. Barrett, Jr. and David L. Honold, Toledo, Ohio, for debtors.

Terry L. Gernert, Bucyrus, Ohio, for Farmers Citizens Bank.

Verne K. Armstrong, Toledo, Ohio, for U.S.A.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Motion for an Order Prohibiting the Use or Sale of Collateral filed by the Farmers Citizens Bank and the Objection to that Motion filed by the Debtors-In-Possession. It appearing that the issues raised by this Motion are primarily issues of law, the parties have agreed that the Court may render a decision on this Motion based solely upon the written arguments of counsel. Pursuant to that agreement, the parties have filed their arguments and have had the opportunity to respond to the arguments submitted by opposing counsel. The Court has reviewed those arguments as well as the entire record in this case. Based upon that review and for the following reasons the Court finds that the Motion for an Order Prohibiting the Use or Sale of Collateral should be GRANTED.

### FACTS

The Debtors-In-Possession in this case are a husband and wife who are engaged in a farming operation. On or about June 26, 1980, the Debtors-In-Possession executed a promissory note in favor of the Farmers Citizens Bank (hereinafter "the Bank"). The terms of that instrument obligated the Bank to extend, at the Debtors' request, funds up to and including the sum of Thirty Thousand and no/100 Dollars ($30,000.00), with interest to accrue at the rate of fourteen per cent (14%) on the unpaid balance. Any funds so extended would be

repayable upon the harvest of any crops by the Debtors-In-Possession.

Although the note does not provide for the conveyance of a security interest, it does require the Debtors-In-Possession to abide by the provisions of a Loan Agreement. This agreement bears the Debtors' signature and sets forth the terms under which the Bank would extend funds. Primarily, these terms restrict the purposes for which borrowed funds could be used and require the Debtors-In-Possession to maintain records of their operations. However, included in the terms of the Loan Agreement is a provision that:

"The borrowers will maintain the security on the loan at all times. Items of security include a first lien on all growing crops on all owned and all rented farm land. The security on the loan may be verified at the lenders request."

In addition to these documents, the Debtors-In-Possession signed a financing statement which was subsequently filed by the Bank in the Crawford County Recorders Office. This financing statement was a prepared form that was titled only as "Financing Statement". On the form appeared boxes wherein certain information was to be entered. In the boxes titled "Debtor(s)" and "Secured Party(ies)" appeared the names of the Debtors-In-Possession and the Bank, respectively. In the space provided for the listing of collateral, there appeared the following entry:

"This Financing Statement covers the following types of collateral including proceeds and products thereof: Crops covered hereby are growing or are to be grown on the following described real estate: See EXHIBIT A"

Appended to the financing statement is a description of seven parcels of land that are used by the Debtors-In-Possession in their operations. This listing is also signed by both of the Debtors.

On September 26, 1984, the Debtors-In-Possession filed their voluntary Chapter 11 Petition with this Court. Their schedule of debts reflects that Eighteen Thousand and no/100 Dollars ($18,000.00) were loaned by the Bank pursuant to this arrangement. The schedules also reflect that the Debtors-In-Possession dispute the security interest claimed by the Bank. In response to this dispute and in an effort to protect the collateral in which they assert an interest, the Bank filed the Motion presently under consideration.

As stated in their arguments, the Debtors-In-Possession object to the Motion to Prohibit Use or Sale of Collateral on the grounds that the Bank does not have a security interest in the crops. Specifically, the Debtors-In-Possession contend that because there is no language within any of the documents which definitively conveys security rights to the Bank, they cannot assert such rights in the property. The Bank argues that the absence of conveyance language is not necessarily defective to the existence of a security interest.

## LAW

The issues presented by these contentions call into question the provisions of Ohio Revised Code § 1309.01 which state in pertinent part:

"(8) Security Agreement means an agreement which creates or provides for a security interest."

They also address the provisions of Ohio Revised Code § 1309.14 which state in pertinent part:

"... a security interest is not enforceable against the debtor or third parties unless:

(2) the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops ... a description of the land concerned ..."

■■■ It is well settled that the existence of a nonpossessory security interest must be evidenced by a writing or writings which demonstrate the parties intent to create the interest. *Matter of Numeric Corp.*, 485 F.2d 1328 (1st Cir.1973). This writing must be signed by the debtor and must contain a description of the collateral. *Matter of Bollinger Corp.*, 614 F.2d 924

(3rd Cir.1980). Although it was once held that the writing must also contain some language which specifically conveys a security interest, *see, American Card Co. v. H.M.H. Co.*, 97 R.I. 59, 196 A.2d 150 (1963), this rule has since been discarded. In revising the rule, some Courts have held that a financing statement containing a description of the collateral, when signed by the debtor, is sufficient to serve as a security agreement. *Matter of Amex Protein Development Corp.*, 504 F.2d 1056 (9th Cir. 1974). Other Courts have held that a financing statement which has been signed by the debtor can fulfill the requirement for a writing when there are other facts and circumstances which reflect the parties' intent to create a secured relationship. *Matter of Numeric Corp.*, supra, *Matter of Bollinger Corp.*, supra. As indicated and for the reasons set forth in *Zoltanski v. Production Credit Ass'n. (In re Hite)*, 4 B.R. 547 (Bkcy.N.D.Ohio 1980), this Court accepts the approach that other facts and circumstances may be used to support a signed financing statement to the extent it operates as the documentation of a security agreement.

In the present case, a review of the financing statement, the loan agreement, and the promissory note finds that there is no specific language which purports to convey a security interest to the Bank. However, the documents also reflect the signatures of the Debtors-In-Possession, thereby signifying their agreement to its terms. Those terms indicate that payment on the loan is due at the time crops are harvested, that the Debtors-In-Possession are to maintain the security, that the security includes a first lien on all growing crops, and that the Bank may verify the security. Furthermore, the financing statement has, in a box marked "Secured Party(ies)", the Bank's name and address, and indicates that the statement covers "the following types of items of collateral including the proceeds and products thereof".

In light of these provisions, it cannot be concluded that the parties did not contemplate the granting of a security interest in the crops. These terms which have been recited, as well as those which have not, are the types of provisions which are often found in other secured transactions and are consistent with the creation of security interests. Similarly, the manner in which the terms "security", "lien", and "collateral" are used is also wholly consistent with the intent to create a security interest, despite the absence of language specifically conveying such an interest. The Debtors-In-Possession have offered no explanation as to why these terms were employed in the agreement when, at the time the agreements were signed, they did not intend to convey to the Bank security in the crops. Therefore, without such an explanation, it must be concluded that the collective import of the documents manifests the parties intent to give the Bank a security interest in the crops. Inasmuch as the financing statement appears proper in all other respects, it must also be concluded that the financing statement has been supported by sufficient facts and circumstances so as to find that the Bank has a lien on the collateral described therein.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the Objection of the Debtors-In-Possession to the Motion for an Order Prohibiting Use or Sale of Collateral be, and is hereby, OVERRULED.

It is FURTHER ORDERED that the Motion for an Order Prohibiting Use or Sale of Collateral be, and is hereby, GRANTED.

It is FURTHER ORDERED that the Debtors-In-Possession shall not utilize nor dispose of collateral described in the financing statement until such time as they are authorized by this Court to do so.