**In the Matter of SUNRISE FARM MARKET, a Partnership, Debtor.**

**Bankruptcy No. B86–00051–Y.**

United States Bankruptcy Court, N.D. Ohio.

April 11, 1986.

Robert S. McGeough, Warren, Ohio, for debtor.

Michael J. Moran, Cuyahoga Falls, Ohio, for Harry C. Lobalzo & Sons, Inc., dba HMR Sales & Services.

## MEMORANDUM OPINION & ORDER

WILLIAM T. BODOH, Bankruptcy Judge.

This cause came on for consideration upon the Motion for Relief from Stay by HARRY C. LOBALZO & SONS, INC., dba HMR SALES & SERVICE ("Movant") and upon the objection to that Motion by the Debtor-in-Possession ("Sunrise"). The parties have presented testamentary and documentary evidence and argument on the two issues raised by Sunrise challenging the existence of a security interest in equipment sold by Movant to Sunrise. The existence of the security interest is challenged by Sunrise, citing both a lack of adequacy of the description of the collateral in Movant's form document and also that the security agreement is not between Sunrise and the actual secured party.

Upon review of the documentary and testamentary evidence, the pleadings and arguments of counsel, and upon a review of the applicable law, we conclude that Movant has a valid and perfected security interest in the collateral, that the collateral is necessary to the reorganization of the Debtor, and that Movant is not entitled to relief from the automatic stay so long as Sunrise provides adequate protection to Movant of its interest in the collateral.

### FACTS

SUNRISE FARM MARKET, the Debtor-in-Possession, is an Ohio general partnership doing business at 8585 South Avenue in Boardman Township, Mahoning County, Ohio, and formerly engaged in the retail sale of produce and delicatessen products, which business was terminated December 8, 1985. At the time of the filing of its Petition for reorganization on January 21, 1986, Sunrise was operating as a lessor of space in the building where it formerly carried on its retail sales business, leasing portions of that building to various business entities engaged in the retail sale of food and delicatessen products. One of Sunrise's lessees, Smaldino's Delicatessen, is currently using the equipment sold by Movant to Sunrise, and Sunrise has a proposed agreement with Smaldino to rent the equipment for Two Hundred Dollars ($200.00) per month.

On or about May 1, 1985, Movant's salesman, Thomas Turner, met with Sunrise's partner, Barry VanWye to complete the agreement of Sunrise to purchase from Movant a "Henny Penny chicken program" which included Sunrise's purchasing certain equipment, including an electric fryer and a warmer. Turner gave to VanWye a computer printout of a quote (Movant Exhibit # 4) which detailed the equipment being sold by Movant to Sunrise. This quote is the Quote # 30785 referred to in Movant's Exhibit # 1. That document provides in paragraph two of the *"Contract Provisions "* that "Buyer grants to Seller a security interest in all equipment described in this contract." No detailed description is contained therein, but is described in detail in Quote # 30785, Movant's Exhibit # 1, which was signed by VanWye as an "owner" of Sunrise Farm Market on May 1, 1985. Both Turner and VanWye testified that on the same date, VanWye and Movant's president signed financing statements (Movant Exhibits # 2 and # 3) which were filed, respectively, with the Mahoning County, Ohio, Recorder and the Ohio Secretary of State. The financing statements specifically refer to "(1) Henny Penny Electric Fryer, Serial # 49318" and "(1) Henny Penny 5230 Warmer, Serial # 00771." The contract (Movant Exhibit # 1) was not in the corporate name but rather in the name of HMR Sales & Service. The financing statements (Movant Exhibits # 2 and # 3) were both in the name of Harry C. Lobalzo & Sons, Inc. Harvey Hudson, the corpo-

rate comptroller for Harry C. Lobalzo & Sons, Inc., testified that HMR Sales & Service is an unincorporated division of Harry C. Lobalzo & Sons, Inc., and HMR Sales & Service is, and has been, a registered tradename of Harry C. Lobalzo & Sons, Inc., for approximately ten years. VanWye testified that Turner required VanWye to sign the contract (Movant Exhibit #1), the financing statements (Movant Exhibits #2 and #3) and the proposal (Movant Exhibit #4) as "a condition of the deal."

Turner testified that based upon his 13½ years' experience as both a serviceman and as a salesman of the equipment sold by HMR Sales & Service Division of Harry C. Lobalzo & Sons, Inc., the current market value of the equipment is Five Thousand, Five Hundred Dollars to Five Thousand, Seven Hundred Dollars ($5,500.00–$5,700.00), assuming proper maintenance and that the equipment was depreciating at the rate of approximately Two Hundred Dollars to Three Hundred Dollars ($200.00–$300.00) per year. Turner further testified that the transportation/delivery add-on referred to in Movant's Exhibit #1 was One Hundred Sixty-Four & 10/100 Dollars ($164.10). That amount would not have been known to the parties on the date that the contract was signed but would have only been known after the equipment was delivered and the freight charges billed. The addition of that freight charge brings the remaining amount due and unpaid on the contract from Sunrise to Movant to the sum of Six Thousand, Eight Hundred Ten & 05/100 Dollars ($6,810.05).

VanWye testified that on the date of the hearing (April 9, 1986), there was no insurance on the equipment or the business premises, the insurance having recently been terminated.

## LAW

■ An Ohio corporation may take a security interest in the name of an unincorporated subsidiary of the corporation or in a fictitious name under which the corporation does business. *Sight & Sound of Ohio, Inc. v. Wright*, 36 B.R. 885 (S.D.Ohio 1983). The remaining issue is whether the Movant has obtained an enforceable security interest in the Henny Penny chicken program equipment sold by Movant to Sunrise on May 1, 1985.

■ Section 1309.01(A)(12), Ohio Revised Code, defines a security agreement as "an agreement which creates or provides for a security interest." Section 1309.14, Ohio Revised Code, provides in pertinent part that "a security interest is not enforceable against the debtor or third parties unless: (2) the debtor has signed a security agreement which contains a description of the collateral...." Thus, a nonpossessary security interest must be evidenced by a written document which demonstrates the intent of the parties thereto to create the security interest. *In re Smith*, 47 B.R. 482, 483–484 (Bankr.N.D.Ohio 1985). The parties do not dispute the conclusion that Quote #30785, referred to in the contract (Movant Exhibit #1) gives an item-by-item description of all of the physical equipment sold by Movant to Sunrise on May 1, 1985. Likewise, there is agreement that the financing statements (Movant Exhibits #2 and #3) specifically describe the electric fryer and warmer by description and by serial number. Those financing statements were filed with the appropriate public officials sufficient to give the required notice to the public of the specific items in which a security interest was given to Movant by Sunrise. The financing statements were signed by Barry L. VanWye on behalf of Sunrise. A financing statement which contains a description of the collateral, when signed by the Debtor, is sufficient to serve as a security agreement where, as here, there are other facts and circumstances which reflect the intent of the parties to create a secured relationship. *In re Smith, supra*, at pg. 484.

## CONCLUSIONS

The witnesses for both Sunrise and the Movant concur that Movant required Sunrise to sign the contract (Movant Exhibit #1), the financing statements (Movant Exhibits #2 and #3), and Quote #30785

(Movant Exhibit # 4) as "a condition of the deal." Sunrise's general partner, Barry VanWye, testified that both he and Turner intended by signing the various documents on May 1, 1985, to give Movant a security interest in the Henny Penny chicken program equipment until payment in full had been made. Indeed, paragraph number two of the *"Contract Provisions"* appearing on the reverse of Movant Exhibit # 1 specifically states that

> Buyer grants to Seller a security interest in all equipment described in this Contract ('equipment'), together with all proceeds thereof, in order to secure the balance due under this Contract, all costs and expenses, including reasonable attorneys' fees (unless precluded by applicable law) incurred in the collection of such balance due, and any other indebtedness of Buyer to Seller, whether now existing or hereafter incurred.

Other than the transportation/delivery add-on noted on the face of the contract in the amount of One Hundred Sixty-Four & 10/100 Dollars ($164.10), no other indebtedness is claimed from Sunrise by Movant. Likewise, Movant has not claimed any attorneys' fees in connection herewith.

On the basis of the testimony of the witnesses and a review of Movant's Exhibits # 1-4, it must be concluded that the parties intended that Sunrise would give to Movant a security interest in equipment sold by Movant to Sunrise on May 1, 1985. Although neither the Henny Penny electric fryer or the warmer were described by name or serial number on the face of the contract, they were described in Quote # 30785, together with all the other physical equipment sold by Movant to Sunrise on that date. Likewise, notice was given to the public of the claim of a security interest by Harry C. Lobalzo & Sons, Inc., in the Henny Penny electric fryer and warmer in the possession of Sunrise.

Since the Court has concluded that the Henny Penny equipment is reasonably necessary for the reorganization of Sunrise, Sunrise shall be entitled to retain possession and use of the equipment so long as Sunrise provides adequate protection of Movant's interests in the equipment. Within thirty (30) days of the entry of this Memorandum Opinion and Order, the parties shall report to the Court whether they have been able to reach agreement on the extent of adequate protection. If the parties are unable to agree, the Court shall make a further determination, based upon the testamentary and documentary evidence already before the Court.

IT IS SO ORDERED.